| | |
|---|---|
| JAMES D. WALKER and <br> LEAH K. WALKER, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN BANKERS INSURANCE <br> COMPANY OF FLORIDA and <br> ASSURANT, INC., <br><br> Defendants. | ) ) ) ) ) ) ) **COMPLAINT** ) ) ) ) ) ) ) |

NOW COME Plaintiffs James D. Walker and Leah K. Walker, by and through the undersigned counsel, and hereby complain of the failure of Defendants American Bankers Insurance Company of Florida and Assurant, Inc., to honor their contractual obligations to the Plaintiffs under their flood insurance policy.

## **INTRODUCTION**

1. This is an action to redress unlawful adjustment and payment of claims in accordance with 42 U.S.C. § 4072.

## **JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 40 U.S.C. § 4072 and 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Eastern District of North Carolina because all acts giving rise to this action occurred in Craven County, North Carolina. Venue is proper for Defendants pursuant to 28 U.S.C. § 1391(b) and (d).

1

## PARTIES

4. Plaintiffs James D. Walker and Leah K. Walker are citizens and residents of Craven County, North Carolina (hereinafter referred to as the "Plaintiffs" or the "Walkers").

5. Upon information and belief, Defendant American Bankers Insurance Company of Florida is a Florida corporation with its principal place of business located in Miami, Florida (hereinafter individually referred to as "ABIC").

6. ABIC may be served with summons and process by service upon its registered agent, designated as Chief Financial Officer, 200 E. Gaines Street, Tallahassee, Florida 32399.

7. ABIC is one of the few Write Your Own (WYO) insurance companies that underwrites and services a Standard Flood Insurance Policy. The WYO Program operates as part of the National Flood Insurance Policy (NFIP) and is subject to its rules and regulations.

8. ABIC is now, and at all times relevant hereto, an insurer or underwriter subject to the original exclusive jurisdiction of the United States District Court for the district in which the insured property or the major part thereof is situated pursuant to 42 U.S.C. § 4072.

9. Upon information and belief, Defendant Assurant, Inc. is a Delaware corporation with its registered agent's office located in Wilmington, Delaware (hereinafter individually referred to as "Assurant") (ABIC and Assurant are collectively referred to as "Defendants").

10. Assurant is a WYO private flood insurance provider that underwrites and services the policies it issues through ABIC. Assurant is also the second largest WYO Program participant in the NFIP. Assurant's SFIP/WYOP policies are underwritten by ABIC of Florida.

11. Assurant may be served with summons and process by service upon its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware, 19808-1645.

12. Assurant is now, and at all times relevant hereto an insurer or underwriter subject to the original exclusive jurisdiction of the United States District Court for the district in which the insured property of the major part thereof is situated pursuant to 42 U.S.C. § 4072.

## FACTUAL ALLEGATIONS

13. This is an insurance coverage action in which Plaintiffs seek relief under their flood insurance policy purchased from Defendants, based on Defendants' failure to honor their contractual obligations to Plaintiffs under their flood insurance policy.

14. Upon information and belief, Defendant Assurant is the trade name used to associate certain insurance products and services underwritten by Defendant ABIC.

15. On or about January 30, 2018, Plaintiffs purchased the renewal of their Standard Flood Insurance Policy No. 87055422482018, NFIP Policy No. 8705542248, National Flood Insurance Program, for the policy period January 30, 2018 through January 30, 2019 (the "Policy") from Defendant ABIC. A true and accurate copy of the Flood Policy Declarations is attached hereto as **Exhibit A**. A true and accurate copy of the Federal Emergency Management Agency, National Flood Insurance Program, Dwelling Form, Standard Flood Insurance Policy, F-122/October 2015, is attached hereto as **Exhibit B**.

16. Upon information and belief, Plaintiffs' Policy covers flood damage to the building in an amount up to $250,000.00 and contents in an amount equal to $100,000.00.

17. On or about September 14, 2018, Hurricane Florence made landfall between Wilmington, North Carolina and New Bern, North Carolina, where Plaintiffs' home at 813 Llewellyn Drive, New Bern, North Carolina (the "Property") is located.

18. Plaintiffs' home was severely damaged by high-speed winds and record-setting rainfalls during Hurricane Florence.

3

19. Among other things, Hurricane Florence's high-speed winds and record-setting rainfalls contributed to the devastating rise in flood water from the Trent River and Neuse River causing severe water damage to the Property.

20. Plaintiffs worked to mitigate any potential flood damage to their home as quickly as possible. On September 12, 2018, Plaintiffs' purchased 100 bags of sand at a cost of $550.00 to protect the Property from flood waters. A copy of the Invoice is attached hereto as **Exhibit C**.

21. Article III, Section C, Subsection 2(a) of Plaintiffs' Policy provides:

> (1) We will pay up to $1,000 for costs you incur to protect the insured building form a flood or imminent danger of flood, for the following:
>     (a) Your reasonable expenses to buy:
>         (i) Sandbags, including sand to fill them

22. The repairs that were needed to restore the Property to its pre-loss condition were extensive. Immediately following Hurricane Florence, Plaintiffs themselves began work to restore their home and each worked for a period of 10 hours per day over 7 days, for a total of 140 hours. Plaintiffs also personally hired manual laborers on September 18 and September 27 to remove additional debris from the Property. Plaintiffs spent a significant amount of time personally removing debris from the Property, and Plaintiffs also paid $100.00 to each of the two laborers. Copies of payments made for manual labor to remove debris are attached hereto as **Exhibit D**.

23. Article III, Section C, Subsection 1 of Plaintiffs' Policy provides:

> (a) We will pay the expense to remove non-owned debris that is on or in insured property and debris of insured property anywhere.
> (b) If you or a member of your household perform the removal work, the value of your work will be based on the Federal minimum wage.

24. On or about September 28, 2018, Plaintiffs received Estimate # 000007 ("First Estimate") from Brent Norman Construction, estimating that the cost at that time to repair Plaintiffs' home to pre-flood condition was $165,000.00. The First Estimate was based upon the

4

costs related to repair the Property due to the four feet of flood water that the Property received from Hurricane Florence. A copy of the First Estimate is attached hereto as **Exhibit E**.

25. On or about October 6, 2018, an insurance adjuster named Stephen Carroll, assigned by Defendants, inspected Plaintiffs' home.

26. On or about October 22, 2018, Defendants paid Plaintiffs funds in the amount $9,893.73 for the expedited building claim payment ("Expedited Payment"). A true and accurate copy of the check is attached hereto as **Exhibit F**.

27. On or about February 12, 2019, Plaintiffs received a Job Quote from Craft's Custom Cabinets ("Cabinetry Quote") in the amount of $7,994.00 to support their Supplemental Claim regarding pre-flood cabinet remodeling that Plaintiffs' had completed to their Property prior to their sustaining flood damage from Hurricane Florence.

28. On or about March 11, 2019, Plaintiffs received an estimate from Neelon R. Associates ("Second Estimate"). Mr. Ray Neelon, a public adjuster, was hired by Plaintiffs to assess the damage to the Property and he entered the Property to perform that assessment on January 30, 2019. On or about June 4, 2019, Mr. Neelon provided a revised estimate based upon additional information Plaintiffs provided regarding their personal property ("Revised Second Estimate"). The Revised Second Estimate determined the flood damage to Plaintiffs' home was $171,411.73, less their deductible and prior payments; and $66,964.09 for contents lost, less their deductible and prior payments. Thereby a net claim of $80,304.37 remained to be paid for the Dwelling and a net claim remaining of $31,140.24 remained to be paid for the Contents. A true and accurate copy of the Second Estimate and Revised Second Estimate are attached hereto as **Exhibit G** and **Exhibit H**, respectively.

29. On or about April 16, 2019, Defendants paid Plaintiffs funds in the amount of

$89,857.36 for the adjusted building damages claim and $34,573.85 for the contents damages claim (the "Claim Payment"). A true and accurate copy of the April 11, 2019 package is attached hereto as **Exhibit I**.

30. The Expedited Payment of $9,893.73 and the Claim Payment of $89,857.36 were significantly less than the First Estimate of $165,000.00 or the Revised Second Estimate of $171,411.74 and were insufficient to restore Plaintiff's Property to its pre-flood damage condition. The Claim Payment of $34,573.85 was also significantly less than the Second Revised Estimate of $66,964.09 and was insufficient to restore Plaintiffs' personal property.

31. On or about June 6, 2019, Plaintiffs notified the Defendants of Mr. Neelon's Revised Second Estimate and supplemented the Claim to include an additional $111,444.61 (the "Supplemental Claim"), which is an accurate reflection of the actual amount needed to restore Plaintiffs' Property. The June 6 notice also provided the First Estimate, the Cabinetry Quote, and an updated Proof of Loss form dated June 13, 2019. A true and accurate copy of the Supplemental Claim is attached hereto as **Exhibit J**.

32. On or about June 25, 2019, Defendants rejected Plaintiffs' Supplemental Claim stating the documents included in the Supplemental Claim were not "fully itemized". A true and accurate copy of the denial letter ("Declination Notice") is attached hereto as **Exhibit K**.

33. On or about September 4, 2019, Plaintiffs notified Defendants of their intent to seek and collect their recoverable depreciation ("Depreciation Request"). A true and accurate copy of the Depreciation Request is attached hereto as **Exhibit L**.

34. On or about September 17, 2019, Defendant ABIC responded to Plaintiffs' Depreciation Request by stating that they had paid the recoverable depreciation amount of $438.59. This amount is based upon Stephen Carroll's estimate which undervalues the amount of

6

Case 4:20-cv-00083-M    Document 1    Filed 05/18/20    Page 6 of 13

work needed to restore the Property to pre-loss condition. The recoverable depreciation amount of $438.59 is inaccurate.

35. Section VII. General Conditions, P. Appraisal of the Policy (the "Appraisal Provision") provides that:

> If you and we *fail to agree* on the actual cash value or, if applicable, *replacement cost of your damaged property to settle upon the amount of loss*, then *either may demand an appraisal of the loss*. In this event, you and we will each choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the State where the covered property is located. The appraisers will separately state the actual cash value, the replacement cost, and the amount of loss to each item. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of actual cash value and loss, or if it applies, the replacement cost and loss. Each party will: (1) pay its own appraiser; and (2) bear the other expenses of the appraisal and umpire equally.

(Emphasis added.)

36. On or about January 10, 2020, Plaintiffs faxed Defendants a formal request to proceed pursuant to the Appraisal Provision. A true and accurate copy of the request is attached hereto as **Exhibit M**.

37. On or about January 21, 2020, Defendants denied Plaintiffs' request alleging that it was not applicable to their Supplemental Claim because "[t]he scope of loss was not agreed upon". A true and accurate copy of the denial letter is attached hereto as **Exhibit N**. At all relevant times, Plaintiffs have made full and proper payments of all premiums owed to Defendants pursuant to the terms of the Policy.

38. At this time, the Supplemental Claim amount of $111,444.61 remains unpaid.

39. At this time, the Defendants have not reimbursed Plaintiffs for the mitigation expenses of $550.00 or reimbursed the Plaintiffs for their debris clean up expenses of at least $200.00.

40. At this time, Defendants have not compensated Plaintiffs in the amount of $1,015.00 based upon the allowed federal minimum wage rate for the 140 hours of labor that they personally expended cleaning up debris.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

41. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 40 above as fully set forth herein.

42. On or about June 6, 2019, Plaintiffs informed the Defendants of assessments and supplemented their original Claim by providing the Supplemental Claim which included an additional $111,444.61. **Exhibit J**.

43. On or about June 25, 2019, Defendants rejected Plaintiffs' Supplemental Claim via the Declination Notice stating the documents included in the Supplemental Claim were improper on the basis that those items were not "fully itemized." **Exhibit K**. Plaintiffs have supplied all itemization needed to support their claim.

44. Plaintiffs have exhausted all administrative remedies in accordance with their Policy. Pursuant to 42 U.S.C. § 4072 Plaintiffs are provided one year from receipt of the Declination Notice to institute an action against their insurer.

45. This action is timely filed within one year after Plaintiffs received the Declination Notice.

## CAUSES OF ACTION

46. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 45 above as

fully set forth herein.

47. Congress enacted the National Flood Insurance Program via the National Flood Insurance Act and thereby so provides that:

> [U]pon the disallowance … of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance … may institute an action … on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in the controversy.

42 U.S.C. § 4072.

48. Further, WYO Companies are exclusively responsible for the policies they issue pursuant to the Federal Emergency Management Guidelines.

> (d) A WYO Company issuing flood insurance coverage shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program, based upon the terms and conditions of the Standard Flood Insurance Policy.
>
> (g) WYO Companies are solely responsible for their obligations to their insured under any flood insurance policies issued under agreements entered into with the Federal Insurance Administrator, such that the Federal Government is not a proper party defendant in any lawsuit arising out of such policies.

44 C.F.R. § 62.23.

## COUNT I – BREACH OF CONTRACT
## 42 U.S.C. § 4072, 28 U.S.C. § 1331, *et. seq.*,

49. Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 48 above as fully set forth herein.

50. In 1968, Congress enacted the National Flood Insurance Act, 42 U.S.C. § 4001 et

9

seq. (the "NFIA"), which established the NFIP in order to make flood insurance coverage available to private residences and businesses on reasonable terms, through federal funding. See, e.g., *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002); *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009); *Woodson v. Allstate Ins. Co.*, 855 F.3d 628, 631 (4th Cir. 2017).

51. The Policy constitutes a valid SFIP contract of insurance between Plaintiffs and Defendants, the terms and conditions of which were triggered by the damages suffered by Plaintiffs' home during Hurricane Florence.

52. Plaintiffs have performed all of their duties consistent with the terms and conditions of the Policy, including without limitation:

    a. their duty to maintain the property;

    b. their duty pay their insurance premiums;

    c. their duty to mitigate damage to the property; and

    d. their duty to notify Defendants of loss covered by the terms of the Policy.

53. All insurance premiums under the Policy have been paid and thus Plaintiffs are rightfully entitled to the benefits of the Policy.

54. Defendants have wrongfully refused to cover the full amount of the damage Plaintiffs suffered as a result of Hurricane Florence, all of which has been properly documented and substantiated through submissions to Defendants by Plaintiffs and their representatives, including the First Estimate, the Revised Second Estimate, and their Supplemental Claim.

55. Defendants' refusal to honor their obligations under the Policy includes, without limitation, failure to pay for mitigation expenses to Plaintiffs' home, failure to pay for debris clean up, and failure to pay for repairs to Plaintiffs' home which were all necessary due to the damage caused by Hurricane Florence.

56. As a result of Defendants' breach of contract, the Plaintiffs have suffered and will continue to suffer substantial damages, the final amount of damages is not yet determinable. These damages include, without limitation, the costs to repair Plaintiffs' home to pre-loss condition.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court enter judgment in favor of Plaintiffs and against Defendants for damages including compensatory damages, consequential damages, and such other relief as the Court may deem appropriate and, award such other and further relief as this Court deems just and proper.

This the 18th day of May, 2020.

> s/George Mason Oliver
> GEORGE MASON OLIVER
> N.C. State Bar #26587
> THE LAW OFFICES OF
> OLIVER & CHEEK, PLLC
> PO Box 1548
> New Bern, NC  28563-1548
> (252) 633-1930
> (252) 633-1950 (fax)
> Email:  george@olivercheek.com
> *Attorney for Plaintiffs*

## VERIFICATION

JAMES D. WALKER, II, first being duly sworn, deposes and says that he has read the foregoing Verified Complaint, and knows the contents thereof, and that the same is true of his own knowledge, except as to the matters therein stated upon information and belief, and as to those, he believes it to be true.

_____
James D. Walker, II

I, Kayla L. Jensen, a Notary Public of Craven County, State of North Carolina, do hereby certify that JAMES D. WALKER, II (the "Signatory") personally appeared before me this day and acknowledged the execution of the foregoing instrument.

I certify that the Signatory personally appeared before me this day and *(check one of the following)*

    ___ I have personal knowledge of the Signatory; *or*

    _X_ I have seen satisfactory evidence of the Signatory's identity by a current state or federal identification with the Signatory's photograph in the form of:

        _X_ a driver's license *or*

        ____ in the form of _____; *or*

    ____ a credible witness has sworn to the identity of the Signatory.

The Signatory acknowledged to me that she has voluntarily signed the foregoing document for the purpose stated therein and, in the capacity, indicated.

Sworn and subscribed before me this 18 day of May, 2020.

_____
Notary Public

Printed Name: Kayla L. Jensen
My Commission expires: 01/07/2023

**KAYLA L JENSEN**
Notary Public
Craven Co., North Carolina
My Commission Expires Jan. 07, 2023

12

## VERIFICATION

LEAH K. WALKER, first being duly sworn, deposes and says that she has read the foregoing Verified Complaint, and knows the contents thereof, and that the same is true of her own knowledge, except as to the matters therein stated upon information and belief, and as to those, she believes it to be true.

_____
Leah K. Walker

I, _Leddia F. Chapman_, a Notary Public of _Jones_ County, State of North Carolina, do hereby certify that LEAH K. WALKER (the "Signatory") personally appeared before me this day and acknowledged the execution of the foregoing instrument.

I certify that the Signatory personally appeared before me this day and *(check one of the following)*

    ✓ I have personal knowledge of the Signatory; *or*

    ___ I have seen satisfactory evidence of the Signatory's identity by a current state or federal identification with the Signatory's photograph in the form of:

        ___ a driver's license *or*

        ___ in the form of _____; *or*

    ___ a credible witness has sworn to the identity of the Signatory.

The Signatory acknowledged to me that she has voluntarily signed the foregoing document for the purpose stated therein and, in the capacity, indicated.

Sworn and subscribed before me this _18_ day of _May_, 2020.

**LEDDIA F. CHAPMAN**
Notary Public.
Jones Co., North Carolina
My Commission Expires Dec. 11, 2021

_____
Notary Public

Printed Name: _Leddia F. Chapman_
My Commission expires: _12/11/2021_